# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **JUAN MENDOZA**, | Case No.: 6:11-cv-06148-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **JEFFERY CARL** and **TIM MUELLER**, Sheriff of Linn County, Oregon, | |
| Defendants. | |

Claud A. Ingram, Jr.
CLAUD INGRAM ATTORNEY AT LAW
PO Box 7941
Eugene, OR 97401

      Of Attorney for Plaintiff

Gerald L. Warren
LAW OFFICE OF GERALD WARREN
901 Capitol Street NE
Salem, OR 97301

      Of Attorney for Defendants

**SIMON, District Judge**.

      Defendant Jeffrey Carl ("Defendant"), a Linn County Deputy Sheriff, responded to two 911-reports that Plaintiff Juan Mendoza ("Plaintiff") was firing a weapon on his property. After he arrived at Plaintiff's residence, Defendant handcuffed Plaintiff for approximately fifteen minutes while Defendant investigated the reports. Defendant determined that Plaintiff had not

committed a crime and removed the handcuffs. Plaintiff filed this suit alleging that Defendant

violated 42 U.S.C. § 1983 and committed the state law tort of false imprisonment. Dkt. 1.

Defendant moved for summary judgment. Dkt. 14. The court finds that Defendant is immune

from suit under the doctrine of qualified immunity and, accordingly, dismisses the § 1983 claim.

Having dismissed the single claim affording this court original jurisdiction, the court declines to

exercise supplemental jurisdiction over the remaining state law tort claim. Defendant's motion

for summary judgment is, therefore, GRANTED.

## BACKGROUND

The court states the evidence in the light most favorable to Plaintiff. *Anheuser-Busch,*

*Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 343 (9th Cir. 1995). Plaintiff lives on

approximately five acres in Linn County, Oregon. Dkt. 17, Stipulation of Facts ("Stip.") ¶¶ 1-2.

On September 15, 2009, Plaintiff began firing a pistol on his property. *Id.* ¶¶ 7-8. Two of

Plaintiff's neighbors called 911 and reported that Plaintiff was firing a weapon. *Id.* ¶ 8.

Defendant was dispatched to Plaintiff's address. Dispatch advised Defendant that Plaintiff had

"emptied the pistol twice and that he was carrying the pistol in the back of his pants." Dkt. 15,

Declaration of Deputy Jeffery Carl ("Carl Decl.") ¶ 2. One of the 911 callers reported that

Plaintiff was "staggering." *Id*. Oregon State Police Trooper Craig Flierl also responded, and

Defendant and Trooper Flierl arrived at Plaintiff's residence at approximately the same time.

Stip. ¶ 11.

Defendant asked Plaintiff where his weapon was. *Id.* ¶ 12. As Plaintiff was reaching for

the pistol, Defendant and Trooper Flierl drew their weapons and pointed them at Plaintiff. *Id.*

¶ 13. Plaintiff reached behind his back, "took his pistol by the grip with his thumb and forefinger

of his left hand on the grip of the pistol and laid it on the ground." *Id.* ¶ 12. Plaintiff "never at

any time held [his] pistol in such a manner that it could be fired." Dkt. 19-1, Declaration of Juan

Mendoza ("Mendoza Decl.") at 2. Plaintiff complied with Defendant and Trooper Flierl's

instructions. Stip. ¶ 13. Based on Defendant's training and experience, he believed that where

one weapon is found there are likely more. Carl Decl. ¶ 4. Defendant asked Plaintiff whether he

had any other weapons, and Plaintiff replied that he did not. Mendoza Decl. at 2; March 19, 2012

Oral Argument Transcript ("Transcript") at 3.

Defendant approached Plaintiff and handcuffed him. Stip. ¶ 14. After handcuffing

Plaintiff, Defendant performed a pat-down search and did not find any additional weapons. *Id.*;

Transcript at 3. Plaintiff did not complaint about the handcuffs being too tight or injuring him.

Stip. ¶ 14. While Plaintiff was handcuffed, Defendant asked Plaintiff about the shooting. *Id.*

Plaintiff explained that he been shooting target practice behind his house. *Id.* Defendant led

Plaintiff – still in handcuffs – to the back of the house, and Plaintiff showed Defendant his target.

*Id.* at ¶ 15; Mendoza Decl. at 2.

After Defendant was satisfied that Plaintiff had not committed a crime, he released

Plaintiff from the handcuffs. Stip. ¶ 15-16. Plaintiff stated that he was in handcuffs for

approximately fifteen minutes. Mendoza Decl. at 3. Plaintiff's wife also stated that Plaintiff was

in handcuffs for approximately fifteen minutes. Dkt. 19-2, Declaration of Barbara Strassman

at 2. Defendant, however, estimated that Plaintiff was in handcuffs for approximately five

minutes. Carl Decl. ¶ 5. As stated above, for purposes of Defendant's motion for summary

judgment, however, the court views the facts in the light most favorable to the nonmoving party.

After Defendant removed the handcuffs, he ran a weapons check on Plaintiff's pistol.

Stip. ¶ 17; Transcript at 4. Defendant also spoke with Plaintiff about gun safety. Stip. ¶ 18.

Following this discussion, Defendant and Trooper Flierl left Plaintiff's property. *Id.* at ¶ 19.

Plaintiff filed suit, alleging violation of 42 U.S.C. § 1983 and asserting state law claims for false arrest and false imprisonment against Defendant and Sheriff Tim Mueller. Dkt. 1. Defendants moved for summary judgment. Dkt. 14. At oral argument, Plaintiff agreed to dismiss the suit against Sheriff Mueller. Transcript at 1. Plaintiff also agreed that for purposes of this case, the false arrest and false imprisonment claims are the same claim. Transcript at 14.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and must draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Summary judgment is not appropriate if a reasonable jury viewing the summary judgment record could find by a preponderance of the evidence that the plaintiff is entitled to a verdict in his favor." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

## DISCUSSION

### A.    Section 1983 Claim

In his first claim for relief, Plaintiff alleges that Defendant deprived him of "his freedom of movement" in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Dkt. 1, Complaint ("Compl.") ¶¶ 15-16. Plaintiff alleges that he "had not committed any crime and Defendant Carl did not have probable cause to believe that Plaintiff

was engaged in any illegal activity." *Id.* at ¶ 13. Defendant's deprivation of Plaintiff's "freedom

of movement" caused him to suffer "extreme fear, anger, humiliation, embarrassment, emotional

upset, anxiety, stress, helplessness and depression." *Id.* at ¶16.  In his motion for summary

judgment, Defendant responds that he is immune from suit under the doctrine of qualified

immunity. Dkt. 18, Memorandum in Support ("Def.'s Mem.") at 7-9.

Qualified immunity "shields federal and state officials from money damages unless a

plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and

(2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-

Kidd*, 131 S.Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The court "may conduct this two-pronged inquiry in any order." *Alston v. Read*, 663 F.3d 1094,

1098 (9th Cir. 2011). The Supreme Court has cautioned that courts should decide close cases

based on only the second prong when there is no need to reach a constitutional question.

*Ashcroft*, 131 S. Ct. at 2080 ("Courts should think carefully before expending 'scarce judicial

resources' to resolve difficult and novel questions of constitutional or statutory interpretation that

will 'have no effect on the outcome of the case.'" (quoting *Pearson v. Callahan*, 555 U.S. 223,

236-37 (2009))). Plaintiff bears the burden of demonstrating "that the right at issue was clearly

established." *Alston*, 663 F.3d at 1098.

For a constitutional right to be clearly established, "'[t]he contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that

right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The court may not

"define clearly established law at a high level of generality." *Ashcroft*, 131 S. Ct. at 2084.

Instead, whether a right is clearly established must be decided "in light of the specific context of

the case, not as a broad general proposition[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001),

*overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

The court agrees with Defendant that he did not violate a clearly established

constitutional right. Plaintiff does not dispute that Defendant was lawfully investigating two 911

calls when Defendant arrived at his property. Instead, Plaintiff alleges that Defendant

impermissibly detained him in handcuffs for fifteen minutes during the course of that

investigation. Even assuming that all of Plaintiff's allegations are true, clearly established law

did not prohibit Defendant's conduct. To the contrary, the relevant case law tends to establish

that a law enforcement officer may lawfully detain suspects in handcuffs to protect the officer's

safety during an investigation. "It is well settled that when an officer reasonably believes force is

necessary to protect his own safety or the safety of the public, measures used to restrain

individuals, such as stopping them at gunpoint and handcuffing them, are reasonable." *Alexander

v. County of Los Angeles*, 64 F.3d 1315, 1320 (9th Cir. 1995). This is true in other circuits as

well. *See e.g. United States v. Pontoo*, 666 F.3d 20, 30 (1st Cir. 2011) (when "officer safety is a

legitimate concern, a *Terry* stop appropriately may involve the application of handcuffs");

*United States v. Fisher*, 364 F.3d 970, 973 (8th Cir. 2004) ("when officers are presented with

serious danger in the course of carrying out an investigative detention, they may brandish

weapons or even constrain the suspect with handcuffs in order to control the scene and protect

their safety").

Furthermore, courts have found that periods of temporary detention lasting longer than

fifteen minutes are not unreasonable. For example, in *Haynie v. County of Los Angeles*, 339 F.3d

1071, 1077 (9th Cir. 2003), the Ninth Circuit found that officers did not act unreasonably when

they handcuffed and placed a suspect in the rear of police car for 16 to 20 minutes. The court

noted that the officers were responding to a report of men with guns and that the suspect refused to yield to police and disobeyed orders. *Id.* In *United States v. Richards*, 500 F.2d 1025, 1028-29 (9th Cir. 1974), the Court found that a detention of an hour while officers waited for a narcotics dog to arrive was not unreasonable. In fact, the Supreme Court has rejected establishing a *per se* rule governing the permissible length of detention during an investigatory stop. *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

In the present case, assuming Plaintiff's version of the facts, Defendant responded to two 911 calls that Plaintiff was firing a weapon on his property. Dispatch advised Defendant that Plaintiff had "emptied the pistol twice" and that a neighbor reported that Plaintiff was "staggering." Dispatch also reported that Plaintiff's pistol was tucked in the back of his pants. Defendant had reasonable cause to fear for his safety. Under these circumstances, there is no clearly established constitutional rule that prohibited Defendant from pointing his weapon at Plaintiff and then handcuffing Defendant for fifteen minutes while he investigated. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Defendant's conduct was neither incompetent nor knowingly violative of the Fourth Amendment. The court concludes, therefore, that there is no material issue of dispute relevant to the determination of qualified immunity. Defendant is immune from suit, and Plaintiff's first claim for relief is dismissed.

**B.      State Law Claim**

Pursuant to 28 U.S.C. § 1367(a), in any action in which the district court has original jurisdiction over a claim, it also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." If, however, "the district

court has dismissed all claims over which it has original jurisdiction," it may decline to exercise supplemental jurisdiction over the remaining claims for which is does not have original jurisdiction. 28 U.S.C. § 1367(c)(3). In "the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988), *superseded on other grounds by statute as recognized in Fent v. Oklahoma Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000). In considering these factors, the court concludes that Plaintiff's remaining state law claim is best addressed in state court. The state court system is best situated to define and apply the contours and limits of the state law tort of false imprisonment. The court declines, therefore, to exercise supplemental jurisdiction over the remaining state law claim, and Plaintiff's case is dismissed.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment, Dkt. 14, is GRANTED.

IT IS SO ORDERED.

Dated this 6th day of April, 2012.


/s/ Michael H. Simon
_____
Michael H. Simon
United States District Judge